UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 08 CR 469 |
| | ) | Judge Charles P. Kocoras |
| JASON R. HYATT | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO MODIFY CONDITIONS OF BOND**

**I.      Introduction**

Defendant has moved this Court to modify his conditions of release.  Specifically, defendant

seeks to be removed from electronic monitoring, which in turn, would remove the condition that

defendant be placed on home detention.  Defendant seeks the modification so that he may "obtain

employment . . . and allow him to properly act as a parent to his young children."

This Court should deny the motion.  As described below, defendant poses the same risk to

the community that he posed at the time this Court entered the original Order Setting Conditions of

Release (the "Order").  Moreover, defendant is set to be sentenced in less than four weeks.  The

government already has submitted its "Government's Version of the Offense" (the "Government's

Version") to the Probation Office.  According to the Government's Version, defendant's offense

level is 32, and his criminal history category equals I.  Defendant's advisory Guidelines range is 121

to 151 months' imprisonment.  Given the nature of the sentence that defendant is facing and the fact

that defendant's bond is unsecured, defendant also poses a flight risk.

**II.     Factual Background**

**A.      The Indictment, Arraignment and Order Setting Conditions of Release**

On June 19, 2008, this Court arraigned defendant on an eleven-count indictment, charging

defendant with wire fraud, making false statements to a financial institution, money laundering, tax

evasion, filing false tax returns, and failing to file tax returns.  The indictment alleged, among other

things, that defendant: (a) defrauded investors in a company he controlled by using in excess of $1.5

million of investor funds for personal purposes; (b) made false statements to Bridgeview Bank

Group ("Bridgeview Bank"); and (c) engaged in tax evasion, filed a false tax return and failed to file tax returns.

Defendant also is a named-defendant in a civil action filed by the United States Securities and Exchange Commission (the "SEC"), pending in the Northern District of Illinois, Eastern Division (Matter No. 08 C 2224) (the "SEC Matter"). Similar to the criminal matter, the SEC Matter arises out of allegations that defendant defrauded investors in his company out of millions of dollars.

At the arraignment, this Court entered the Order. One of the conditions of release was that defendant be placed on "Home Detention" with an electronic monitoring device. The government requested that the Court impose such a condition for the following reasons, among others: (a) defendant had demonstrated a willingness to violate court orders by apparently violating a freeze order in the SEC Matter[1]; (b) despite the filing of the SEC Matter, defendant continued to live a life of luxury – paying $15,000 in country club membership dues, employing a housekeeper and a nanny and hiring a personal trainer for his wife; (c) defendant had no property to post because all of his property was under the control of a receiver; and (d) no one was willing to post any property for defendant.

In ordering defendant placed on home detention, this Court stated that if defendant wished to challenge the government's arguments, defendant should schedule an evidentiary hearing in front of United States Magistrate Judge Valdez. *See* Docket Nos. 8 and 11. Defendant did not schedule such a hearing, nor has he contested the arguments made the government in any other way. Indeed, on July 25, 2008, defendant agreed to an order finding him in contempt of the asset freeze order entered in the SEC Matter.

----

[1] Significantly, defendant's wife was the person who actually withdrew the funds from the frozen bank accounts after the freeze order was in place. In total, the wife withdrew over $50,000 from three separate bank branches. It is now defendant's wife who claims that defendant's conditions of release need to be modified.

      **B.**      **Current Status**

            **1.**      **Change of Plea**

On November 16, 2009, defendant entered a blind plea of guilty to Counts 1, 5 and 8 through 11 of the indictment – admitting that he had: (a) defrauded investors out of approximately $1.5 million; (b) made false statements to Bridgeview Bank that resulted in Bridgeview Bank loaning approximately $779,000, a majority of which was used for defendant's personal benefit; and (c) engaged in various tax crimes.  Defendant's sentencing is set for January 28, 2010.

            **2.**      **Government's Version**

The government submitted the Government's Version to the Probation Office on or about November 30, 2009.  In the Government's Version, the government calculated defendant's offense level to be 32, and his criminal history category to be I.  Defendant's advisory Guidelines range is 121 to 151 months' imprisonment.

As part of the Government's Version, the government detailed, as relevant conduct, two additional diversions of investor assets engaged in by defendant.  The total amount of the diversions set forth as relevant conduct was approximately $2.1 million, which defendant used for his personal benefit.  Indeed, as set forth in the Government's Version, defendant used $2 million to fund his investment in Panacea Partners, LLC ("Panacea Partners")[2], the same company that defendant used to obtain the $779,000 in loans from Bridgeview Bank.  To conceal the source of the funds defendant used to invest in Panacea Partners, defendant claimed that the funds came from KonradRagnar, LLC, a limited liability company that defendant created.  The name KonradRagnar was a combination of the names of two of defendant's children.

That defendant structured his investment in Panacea Partners as having come from KonradRagnar is significant.  This Court may recall that at the change of plea hearing, the government informed the Court that its evidence at trial with respect to Bridgeview Bank would

---

[2] Panacea Partners was a company that owned and operated De La Costa, an upscale Chicago restaurant located near Navy Pier.

show that defendant and Attorney A falsely represented to the bank that Panacea Partners needed the loan to buy-out a partner named Konrad Ragnar. The government stated that its evidence would show that Konrad Ragnar was not an actual person and that the money was not needed to buy him out.

Defendant disputed those facts. Under oath, defendant denied knowing that such a representation about Konrad Ragnar was made to the bank by him or anyone else. While it was not necessary for defendant to admit that fact in order for this Court to accept its plea, the facts demonstrate that defendant was not candid with the Court when he made that statement.

### 3.    Defendant's Employment

Defendant's conditions of release allow him to work. Pretrial Services has informed the government that defendant was, in fact, working until shortly before the trial was scheduled to begin. It was Pretrial Services' understanding that defendant stopped working as a result of the pending trial.

## III.    Argument

With defendant's sentencing less than four weeks away, this Court should not make defendant's conditions of release more lenient. Defendant is a flight risk and poses an economic danger to the community. Due to the fact that defendant is facing a sentence of over ten years, a realistic possibility of flight exists. Further, the fact that defendant is facing a sentence of over ten years, combined with the fact that defendant continues to engage in deceitful conduct (*e.g.*, his claimed lack of knowledge regarding representations made to Bridgeview Bank about KonradRagnar), makes it a realistic possibility that he would attempt to engage in fraudulent conduct in order to provide "security" for his family while he is in prison. The fact that neither defendant nor anyone else has posted any security for defendant's bond compounds his risk of flight and the danger he poses to the community.

Defendant's claim that he needs the conditions of release modified so that he can obtain employment is not accurate. Defendant can currently look for and maintain employment. As for

defendant's claim that he needs the conditions of release modified so that he can participate more fully in family affairs, that claim does not outweigh society's interest in being protected from defendant and the interest in making sure that defendant appears for sentencing.

This Court should not modify defendant's conditions of release.  Accordingly, this Court should deny defendant's motion.

## IV.     Conclusion

For the reasons set forth above, this Court should deny defendant's motion to modify his conditions of release.

Dated: January 4, 2010

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By:     Scott R. Drury/s
        SCOTT R. DRURY
        KENNETH YEADON
        Assistant United States Attorneys
        219 South Dearborn, 3rd Floor
        Chicago, Illinois 60604
        (312) 353-1416